Johnson, J.
delivered the opinion of the Court.
The leading question presented by the special verdict in these cases, is, whether the authority of the Courts of Common Pleas, in I he appointment of guardians for infants, is concurrent with that of the Court of Equity; or whether it is not limited, in respect to the property of infants, to that, which that Court distributes to them.
The care of infants, and the management of their estates, belonged originally and exclusively to Chancery, and was, and still is, a much cherished branch of that jurisdiction. The difficulty of access to that Court, as it was originally organized, induced the Legislature, from time to time, to confer on the Courts of Law, on account of their greater accessibility, portions of the Chancery jurisdiction in relation to this, and other matters. By the act of 1791, 1.Faust, 27, the Courts of Law were authorized to make partition, orto order sales for the purpose of distribution, of the estates of persons dying intestate; but it conferred no power to appoint guardians, in chief, for infants, who might be interested in such estates; and first or last, the parties were compelled to go into Chancery, for the purpose of obtaining guardians to take charge of estates, of which partition or distribution was made by the Courts of Law.
This inconvenience suggested the act of 1808, and is alluded to in the preamble of that act. The remedy provided by it is, *463 “ that all the power and authority appertaining to, and exercised by, the Court of Equity, as to the appointment of guardians of the persons and estates of minors, be, and the same is hereby vested in the Judges of the Courts of Common Pleas, or either of them, holding such Courts, so far as the rights of minors may be concerned in any real or personal property, to be divided under the act of assembly, passed on the 19th of February, 1791, as well as all other acts relative to the partition of estates, real and personal, &c.” Acts of 1808, pp. 47, 48.
I cannot myself well conceive of any terms which could have been employed, not even those of express limitation, which would more distinctly convey the idea, than those in the act do, that the Legislature intended to restrict the powers of the Court of Common Pleas in the appointment of guardians in chief, to the property, in which infants were interested, to be divided by that Court under the authority of law. Both the history and the preamble of the act shew, that the sole object was to supply defects in the several acts, which authorized the Courts of Common Pleas to make partition; and all that was wanting was an authority to appoint guardians to take charge of estates distributed to infants: and I can conceive of no reason, which should induce the Court to extend that power by a laboured construction. It is a branch of jurisdiction which the Courts of Law, are, at best, but badly organized to administer; and since the present convenient arrangements of the Courts of Equity, it is rather to be regretted, that the whole subject has not been turned over to their exclusive management.
The Court of Common Pleas had no authority to confer on Hannah Gray any power over the property of her wards, other than that to be divided by the order of the Court; and, upon looking into the proceedings stated in the special verdict, I am satisfied that the order appointing Hannah Gray the guardian of Robert, Jane, and Hannah, minor children of Peter Gray, extended no further.
The petition for guardianship is made with express reference to a proceeding in partition, then pending in the Court, and which, it appears, only related to the real estate; and although the terms of the order of appointment are general, yet reference is made to the petition ; and when the whole proceeding is taken together, in connexion with the powers of the Court, it cannot. *464 I think, be contended, that the order embraced more : and if it -j. waS) so far as it transcended it, void and inoperative. The general condition of the bond, on which this .action is brought, which obliges the gnaidtau to take the care and management of all the rights and interest of the minors, as well those which liad not, as those which had been distributed to them, under the order of the Court in the proceedings of partition, was an interpolation of the clerk of the Court, who drafted the bond.
The question now is, whether the defendants, as sureties of the guardians, are chargeable for a breach of that part of the condition, which res deis her accountable for money, which she received from the administrator of the estate.
The object of requiring the guardian to give bond and security, was to secure the faithful performance of the duties, which that character imposed upon her, and which the law enjoined, and no more. It was a legal obligation which she undertook to perform. The law itself prescribes the duty, which neither the Court, the clerk, nor herself, were competent, even by express stipulation, to dispense with, or vary; and when she had performed that, she would have done all the law required, or her contract imposed.
This is even more emphatically true in relation to her sureties. In estimating the chances of their responsibility, the inquiry would necessarily be, as to what were the powers, duties, and liabilities, which were incident , to her character of guardian, and how far she was competent to discharge and perform them. These can only be ascertained, for the reasons before given, by referring to the law which directs and prescribes them ; and it is in reference to that alone that they consent to be bound, and not to that which a mere ministerial officer of the Court may think proper to impose. They are bound then, only so far as the condition imposed by the law has been violated. It is upon this principle that the Court proceeded in the cases of the Treasurers v. Stevens, 2 M‘C. 107, and Harrington v. Cole, 3 M‘C. 509.
It has been further insisted, however, that although this super-added condition may be void, under the act of 1808, yet it is bidding on the defendant as a common law bond. One may, it is true, bind himself in any condition he pleases, if it is not *465 against law; 'but in the interpretation of contracts, the Court is not'permitted to shift the responsibility, which they impose, from the subject matter with reference to which they are made, to one which is different and foreign. The defendants might have voluntarily entered into a bond to the clerk of the Court, even without an order, that they would be responsible to all persons, interested, for all moneys which their principal might receive on their account; and if upon this security money had been confided to her, I have no doubt that they would have been bound by it. But here the undertaking was in reference to the principal’s duties and liabilities as guardian, and the Court would not be warranted in transferring it to another obligation, which she incurred. As well might it be extended to all the transactions of her life.
vide Cross Hinit,b anísí* 211.
The right of the defendants to have the decree of the Court of Equity against their principal opened, for the purpose of ascertaining how far they are responsible for her defalcations, is unquestionable. This is an action on a bond conditioned for the ’ performance of covenants; and it is incumbent on the plaintiff to'shew, in what the condition has been broken, and the extent of the damages sustained. To do this, a decree of the Court of Equity is introduced in evidence, and from this it appears, that other matters have been mixed up with those, in which the sureties are interested; and it is rather the duty of the plaintiff,' than a favour done to the defendants, to sift out and shew, for how much of the gross sum the defendants are responsible. And so it was ruled in Cureton v. Shelton, 3 M‘C. 412.
This rule is equally applicable to the palpable error in the decree, which allows to I>. McDavid, and Jane, his wife, and Robert Gray, .two-fourths instead of two-sixths of the proceeds of the lands purchased by Hannah Gray, which constitute the second item in the account accompanying the report of the commissioner. There were .in all six children intitled to distribution of that item, and the decree gives to these two one-half of the amount. If it had already been so paid to them, the other persons intitled would not be bound ; nor would a recovery here bar them of their right, as they are not parties, and the' sureties ought not to be twice charged with it.'
*466 It would seem also, that the commissioner in making up the aecouuts ()f Hannah Gray, as guardian, has set down the interest °f D- McDavid and wife, and Robert Gray in the other lands of the estate, at only $87.17 cents each, when it appears from the return of the commissioners, who executed the writ of partition, to have amounted to $135.86 each; and it is asked that the decree of the Court of Equity may be opened in their behalf also, and they let in to correct the mistake. It is most probable, that this is a mistake made by the commissioner of the Court of Equity, but I am very clear that this Court possesses no authority to correct it. For any thing which appears on the face of the commissioner’s report, or the decree founded on it, the amount may have been reduced by payments actually made; or it may have been lost without the fault of the guardian : in either event the plaintiff would not be intitled to recover, and as a matter of account the Court of Law has no jurisdiction over it, although it consists of a single item. The only remedy will be. to apply to the Court where the error originated. It is therefore ordered, that in each of these cases the postea be delivered to the plaintiff, and that he have leave to enter up his judgment m each case in the usual form, for the penalty of his bond, and damages assessed by the jury, con-formably . to the preceding view of the liabilities of the defendants, and the costs of suit: and that upon the defendants paying the said damages and costs, the plaintiff, or his attorney, shall enter satisfaction on each judgment.
Colcock, J. concurred.
Motion granted.